# Richmond

CARSON T. OVERSTREET v. COMMONWEALTH OF VIRGINIA.

December 3, 1951.

Record No. 3849.

Present, All the Justices.

The opinion states the case.

*J. H. Lavenstein,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Carson T. Overstreet, sometimes hereinafter referred to as defendant, complains of a judgment finding him guilty of a misdemeanor, a violation of section 43-13, Code of Virginia, 1950. Upon his plea of not guilty, a jury being waived, the court heard the case. His sentence was fixed at a fine of $100 and confinement in jail for thirty days. He asks us to set aside his conviction on the ground,—first, that the judgment is contrary to the law and the evidence, and, second, that Code, section 43-13 is unconstitutional, in that it authorizes the deprivation of one's property without due process of law and allows imprisonment for debt.

The evidence is certified to us in narrative form.

In July, 1949, Overstreet entered into a contract with W. R. Horne to make certain improvements and repairs to the latter's home for the sum of $2,600. In the following month of August, he purchased from W. L. Broaddus certain building material of

the value of $448.98, to be used in the work on Horne's house. Broaddus several times thereafter demanded of defendant payment on the material account. On each occasion defendant promised that the account would be attended to; but failed to fulfill his promises. On one occasion he told Broaddus that he was going to get Horne to give him an advance on his contract so that he could pay the bill.

W. R. Horne testified that on October 7, 1949, Overstreet came to him with the bill for material he had purchased from Broaddus and another small bill of the same character owing to another person; that Overstreet showed him his own check made out to his two creditors in the amounts of their respective bills; and requested $500 on account so that he might pay the bills. Thereupon, Horne executed and delivered his check for $500, payable to Carson T. Overstreet, putting under his signature the language, "Building Repair Fund." The defendant endorsed and cashed the check on October 9, 1949.

On the day of his trial Overstreet had not completed his contract with Horne, but the latter had paid him a total of $2,400 thereon, leaving a balance of $200 due when all of the work was completed according to the contract. Defendant, however, has never made any payment on the Broaddus account, and the latter has reduced the debt to judgment.

Overstreet, testifying in his own behalf, did not deny any of the above evidence. He said, referring to a written memorandum made out by himself, that he had paid out $1,828.36 for labor and $699.20 for material on the Horne job.

On cross-examination, the defendant, when asked with reference to specific items on his material account, and whether or not he had any receipted bill, any memorandum, other writing, or record showing the payment of them, replied that he had nothing with him. He said he did not have an account book, but did have at his home accounts or memoranda which would support his testimony. Asked why he did not bring the books or accounts, receipts or other evidence with him, he replied that he did not think it was necessary because he was a man of honor and did not propose to tell anything but the truth.

The trial judge, in his memorandum opinion, tells us that the defendant's manner of testifying "was arrogant, elusive and evasive."

The statute involved here, Virginia Code, 1950, section 43-13, reads as follows:

"Any contractor or subcontractor who, with intent to defraud, shall retain or use the funds, or any part thereof, paid by the owner to such contractor or by the owner or contractor to a subcontractor under any contract for the construction, removal, repair or improvement of any building or structure permanently annexed to the freehold, for any other purpose than to pay persons performing labor upon or furnishing material for such construction, repair, removal or improvement, shall be guilty of a misdemeanor in appropriating such funds to his own use while any amount for which he may be liable or become liable under his contract for such labor or materials remains unpaid, and may be prosecuted upon complaint of any person or persons so defrauded, and upon conviction, shall be punished by a fine of not less than one hundred nor more than two hundred and .fifty dollars, or by confinement in jail not less than thirty days nor more than six months, or by both such fine and imprisonment in the discretion of the court.

"The use by any such contractor or subcontractor of any moneys paid to him under the contract, before paying all amounts due or to become due for labor performed or material furnished for such building or structure, for any other purpose than paying such amounts, shall be prima facie evidence of intent to defraud."

Defendant contends that there was no evidence to show that the money received by him from Horne was used for any other purpose than to pay for labor and material on the Horne contract, and that his statement that he paid out for labor and materials $127.56 more than he received from Horne should have been accepted as true. He argues that the burden was on the Commonwealth to prove that he used the money for some other purpose.

Code, section 43-13 is found in chapter 1 of Title 43, sections 43-1 to 43-22, inclusive, Code of Virginia, 1950, entitled "Mechanics' and Materialmen's Liens." Under the above statutes, an owner may enter into an agreement with the contractor for the erection of a building, and persons furnishing labor or material to the contractor, even without the knowledge of the owner, may obtain liens against property of the owner to the extent of the amount due from the owner to the contractor,

by taking certain prescribed steps. If these liens are not paid by the contractor, the owner may retain and withhold from the contractor such sum as may remain due to the contractor to satisfy the liens.

■ Code, section 43-13 has for its object additional protection and security to subcontractors, laborers, or materialmen furnishing labor or material for work undertaken by the contractor, as well as to relieve the owner of claims, liens and litigation. It does not interfere with the liberty to contract, since contractors enter into their engagements with the knowledge of the statute just as they enter into their engagements with the knowledge of other statutes relating to mechanics' and materialmen's liens. It was enacted in the exercise of the police power, in that its object is the prevention of fraud and becomes a part of every contract covered by its terms. Its penalty is not invoked by any reason of the contract, but only in case of misapplication of money subsequently committed by contractor. The penalty of the statute only arises if and when the offense is committed. No innocent person can be injured by its provisions. Only the contractor who diverts money with evil intent to defraud need fear its provisions.

Pertinent to the provisions of the statute are the following facts:

In August, 1949, defendant purchased material from Broaddus for use in the building contract with Horne, and in June, 1950, ten months thereafter, had paid no part of the bill, although he had received the sum of $2,400 upon his contract. He obtained a check for $500, a part of the above sum, in October, 1949, upon the express representation that it was to be applied in part to the full payment of the account of Broaddus. He cashed that check promptly, and eight months thereafter had not paid Broaddus. He used or retained the $500, and there is no evidence that he made any payment for labor or material to anyone after its receipt.

■ Thus, the facts make it clear that the defendant used money paid to him under his contract with the property owner before paying all amounts due for material furnished for the improvement and repair of the owner's building. He knew or ought to have known where the funds went, and what he expended them for. Since it was his duty to apply them, or so much thereof as was necessary, to the payment of labor and material

on the Horne job before using them for any other purpose, it became his duty to disclose the nature of his expenditures and to whom payments were made. That information was peculiarly within his knowledge; whereas, it was practically impossible for the Commonwealth to trace the funds after they came into his hands. His failure to disclose the items for which the funds were spent, and the persons to whom they were paid creates a presumption of fact that they were used for some purpose other than paying amounts due or to become due for labor performed or material furnished. Under the statute this constituted *prima facie* evidence of intent to defraud. It then became incumbent upon him to produce evidence to the contrary. It is apparent, under the circumstances recited, that defendant's testimony was of such a nature as to be inconsistent with his innocence, and that the trial court was justified in refusing to accept it as reflecting the true situation.

In support of defendant's contention that Code, section 43-13 is unconstitutional, he cites *People* v. *Holder,* 53 Cal. App. 45, 199 P. 832, and *Commercial Nat. Bank* v. *Smith,* 60 S. D. 376, 244 N. W. 521.

In *People* v. *Holder, supra,* it was held that two statutes operating as amendments to a general embezzlement statute were invalid, as destroying the right to enter into a contract, and as attempting to require a contractor to make specific application of money paid in performance of the contract, which money was held to be solely that of the contractor; and, consequently, any legislation that made it a crime for one to use his own money for any purpose other than the payment of his debts was violative of a provision of the Constitution of that State, which expressly prohibited imprisonment for debt arising out of or founded on a contract. This was followed in the South Dakota case, which State has a similar constitutional provision and has adopted both the statute and construction from California.

Statutes analogous to ours seem to have been considered in only five other States. These are Minnesota, (*State* v. *Harris,* 134 Minn. 35, 158 N. W. 829); Wisconsin, (*Pauly* v. *Keebler,* 175 Wis. 428, 185 N. W. 554); Washington, (*State* v. *Williams,* 133 Wash. 121, 233 P. 285); South Carolina, (*State* v. *Hertzog,* 92 S. C. 14, 75 S. E. 374); and Delaware, (*State* v. *Tabasso Homes,* 42 Del. (3 Terry) 110, 28 A. (2d) 248), in each of which the statute there under review was held to be constitutional.

The Minnesota case was tried under a statute (Chapter 105, Laws 1915 of Minnesota), which provided that the misuse by a contractor, with intent to defraud, of moneys paid to him by the landowner for whom the contractor is making improvements on the land, shall be larceny.

Subsection 3 of section 3315 of the Wisconsin statute provided that ''All moneys paid by the owner to the principal contractor shall be and constitute a trust fund in the hands of such principal contractor to the amount of all claims due from or owing by such principal contractor for work, labor and materials * * *, until all such claims have been paid;'' and made the use of such moneys by the principal contractor for any purpose other than for the payment of such claims embezzlement.

The Washington statute, (section 2604, Rem. Comp. Stat. P. C. 8947) provided that contractors who shall receive full price for labor or materials for which a lien might be lawfully filed, shall be deemed ''agents'' within the meaning of section 2601, sub-division 3, defining larceny by embezzlement.

In the Delaware case, decided in 1942, there was under review statutes which declared money received for the erection, construction, etc., of a building to be trust funds; made it unlawful to pay out said funds until all claims due for labor and material had been paid; provided a penalty for violation; and made the failure of a contractor to pay in full or pro rata from time to time the full extent of the moneys received by him toward all claims for labor and material, under certain limitations, *prima facie* evidence of the misuse or misappropriation of the trust funds.

The Virginia statute is fundamentally different from those of California and South Dakota, in that in Virginia it is the intent to defraud and not the indebtedness which is made the determining feature in establishing guilt. The contractor is not punished because he owes the money; but for the reason that he, with intent to defraud, has retained or used the funds for some other purpose than to pay persons performing labor or furnishing material to enable him to carry out his contract, while the amount for which he is liable for labor and material remains unpaid. A prosecution, under the statute, does not affect the debt.

The second paragraph of the statute was intended to relieve the Commonwealth from the necessity of producing further specific proof of intent to defraud, when circumstances are

shown similar to those here. Such circumstances are declared *prima facie* evidence of intent to defraud, and cast on the defendant the burden of producing evidence to the contrary.

There is a moral obligation closely akin to a legal trust relation extending to both the owner and to those whose material or labor has entered into a structure, that the compensation paid therefor by the owner should not be misapplied. There is something more than a mere contractual relation between the owner and the contractor and between the contractor and the others referred to in the statute. The object of the statute is to prevent the misappropriation of funds and it is not designed to imprison for debt.

A judgment debtor who disobeys an order for the payment or delivery of money or property in a legal proceeding is not imprisoned because the judgment is for a debt founded on a contract. The imprisonment is on account of the criminal act in not obeying the judgment.

Among statutes of the class under review are those providing penalties for receiving deposits when a bank or broker is insolvent, Virginia Code, 1950, section 6-3; for issuing bad checks, Va. Code, 1950, section 6-129, *et seq.*; for failure to pay for or return goods delivered for selection or approval, Virginia Code, 1950, section 18-179, and for defrauding hotel keepers, boarding houses, etc., Virginia Code, 1950, section 18-182.

The judgment of the trial court, in our opinion, is fully justified under the facts in this case. For that reason, its judgment is affirmed.

*Affirmed.*