PEOPLE v MILLER

1. CRIMINAL LAW—DIRECTED VERDICTS—ACQUITTAL.

A directed verdict of acquittal may be granted only where there is no evidence at all, either direct or circumstantial, on each material element of·the offense charged.

2. FRAUD—CRIMINAL LAW—BUILDING CONTRACT FUND ACT—JUGGLING OF FUNDS—TRUSTS—STATUTES.

The building contract fund act is designed to prevent contractors from juggling funds between unrelated projects; by imposing a trust as to monies paid to a contractor, the act ensures that funds for a particular project will be used for that project alone (MCLA 570.151 *et seq.;* MSA 26.331 *et seq.).*

3. FRAUD—CRIMINAL LAW—EVIDENCE—BUILDING CONTRACT FUND ACT—CONTRACTORS—STATUTES.

Evidence of intent to defraud is shown, under the building contract fund act, by the appropriation of funds paid to a contractor before the payment by the contractor of all moneys due or so to become due (MCLA 570.153; MSA 26.333).

4. STATUTES—STATUTORY CONSTRUCTION—COURT OF APPEALS—SPIRIT AND PURPOSE OF ACT.

The Court. of Appeals, when construing an arguably ambiguous

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 553.
[2, 3] 63 Am Jur 2d, Public Funds § 20.
[4] 73 Am Jur 2d, Statutes §§ 194, 272, 275.
[5] 73 Am Jur 2d, Statutes §§ 277, 278, 281.
[6] 76 Am Jur 2d, Trusts § 311.
[7] 75 Am Jur 2d, Trial § 554.
[8] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[9] 73 Am Jur 2d, Statutes § 346.
[10] 41 Am Jur 2d, Indictments and Informations § 60.
[11] 29 Am Jur 2d, Evidence § 269.
[12] 21 Am Jur 2d, Criminal Law §§ 345–348.
[13] 81 Am Jur 2d, Witnesses § 76.
[14] 29 Am Jur 2d, Evidence §§ 251–257.

statute, looks to the spirit and purpose of the legislation to give
it a reasonable construction.

5. Statutes—Criminal Law—Remedial Statutes—Building Contract Fund Act—Liberal Construction.

The building contract fund act is a remedial statute and, as such,
it is to be given a liberal construction for the advancement of
the remedy it affords (MCLA 570.151 *et seq.;* MSA 26.331 *et
seq.).*

6. Trusts—Building Contract Fund Act—Contractors—Duty of Contractor—Statutes.

A trust is imposed by the building contract fund act as to funds,
given to a contractor by a party with whom the contractor has
agreed to do a construction project, which will be needed to pay
laborers, subcontractors or materialmen who will have to be
hired to complete the project; the contractor is the trustee and
his primary duty as trustee is to ensure that the funds are
spent on the particular project for which the funds were
deposited.

7. Criminal Law—Motions—Directed Verdict—Acquittal—Evidence.

A defendant's motion for a directed verdict of acquittal was
properly denied where the prosecution presented evidence on
every element of a statutory offense.

8. Appeal and Error—Criminal Law—Constitutional Law—Preserving Issue.

Appellate review of the constitutionality of a statute is generally
precluded where the constitutionality issue was never raised in
the trial court.

9. Constitutional Law—Criminal Law—Statutes—Vagueness.

The standard for determining whether a criminal statute is void
for vagueness is: a statute which either forbids or requires the
doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its
application violates the first essential of due process of law;
however, the fact that the Legislature has not specified every
conceivable type of practice which is permitted or prohibited
does not render a statute unconstitutionally vague.

10. Witnesses—Criminal Law—Res Gestae Witnesses—Statutes.

The prosecution must endorse all witnesses on the information;
however, this rule applies only to res gestae witnesses (MCLA
767.40; MSA 28.980).

11. CRIMINAL LAW—EVIDENCE—REBUTTAL EVIDENCE—DISCRETION OF
    TRIAL JUDGE—FRAUDULENT ACTS—INTENT TO DEFRAUD.
    Rebuttal evidence is broadly defined and whether rebuttal evi-
    dence could have been offered earlier is within the trial court's
    discretion; it was proper to allow rebuttal testimony as to a
    defendant's similar acts which may have been fraudulent
    where the defendant had asserted that he had no intent to
    defraud the complaining witness, and intent to defraud was an
    element of the crime charged (MCLA 768.27; MSA 28.1050).

12. WITNESSES—CRIMINAL LAW—DEFENSE WITNESSES—RES GESTAE
    WITNESSES—DUTY OF PROSECUTOR.
    The prosecution has no duty to subpoena defense witnesses who
    are not also res gestae witnesses.

13. WITNESSES—CRIMINAL LAW—ENDORSED WITNESSES—SUBSTITUTED
    WITNESSES—BANK RECORDS—APPEAL AND ERROR.
    The prosecution's calling of substituted bank representatives as
    witnesses instead of the endorsed bank representatives was not
    error where (1) it was the bank records that were at issue and
    the substituted representatives possessed equal knowledge of
    the records, (2) the prosecutor used due diligence to produce the
    endorsed witnesses, and (3) after the substitutes explained why
    they were appearing, defense counsel failed to object to their
    appearance or testimony and he cross-examined both represent-
    atives.

14. EVIDENCE—RELEVANCE—DISCRETION OF TRIAL JUDGE.
    The determination of the relevance of evidence is within the
    sound discretion of the trial judge.

Appeal from Macomb, George R. Deneweth, J.
Submitted June 15, 1977, at Lansing. (Docket No.
26184.) Decided September 20, 1977.

Tracy Miller was convicted of violating the
building contract fund act. Defendant appeals.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *George N. Parris,*
Prosecuting Attorney, *Don L. Milbourn,* Chief Ap-
pellate Lawyer, and *Alice F. Sage,* Assistant Prose-
cuting Attorney, for the people.

*William B. Ward,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. FREEMAN,* JJ.

D. E. HOLBROOK, JR., P. J. Defendant was convicted of violating the building contract fund act, MCLA 570.151 *et seq.;* MSA 26.331 *et seq.* Essentially this act creates a trust fund for the benefit of customers, subcontractors, laborers, and materialmen as to monies paid the building contractor to ensure the funds are actually used for construction purposes.

The prosecution arose from the aborted sale of a swimming pool to the complaining witness, Mrs. Bundy, and her husband. Primarily the prosecution based its case on bank records which showed the deposit of the Bundy downpayment check in an overdrawn Miller account and the use of the funds the very next day, before any work was done on the Bundy pool. In addition, to counter defendant's claim that he had no intent to defraud the Bundy's, the prosecutor called six other unsatisfied Miller customers as rebuttal witnesses.

After a two-day trial a jury convicted defendant and he was sentenced to from two to three years imprisonment. Defendant appeals as of right, raising numerous allegations of error, and requests a new trial. We find several of defendant's contentions merit discussion but not reversal.

Although the building contract fund act is primarily a penal statute, the only reported decisions deal with various applications in the civil context. The instant case represents the first criminal prosecution to reach the appellate level.

As noted earlier the basic thrust of the statute is

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to protect certain persons from unscrupulous or underfinanced building contractors. The purpose of the statute is set forth in the title:

"An act to protect the people of the state from imposition and fraud in the building construction industry and to provide penalties for the violation of this act."

The first section of the act, MCLA 570.151; MSA 26.331, imposes a trust as to monies paid a contractor—a trust in favor of the person making the payment, laborers, subcontractors or materialmen. The contractor is considered the trustee of all funds paid him for building construction purposes.

The next section, MCLA 570.152; MSA 26.332, makes it a felony for the trustee-contractor to retain or use, with intent to defraud, any payments made to him for any other purpose than to first pay laborers, subcontractors and materialmen. This section continues by prohibiting the appropriation of trust funds to the contractor's own use, "while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid".

The final section of the act, MCLA 570.153; MSA 26.333, provides that the appropriation of monies paid the contractor for building operations, "before the payment by him of all moneys due or to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud".

Specifically defendant contends that technically he did not violate the statute and consequently should have been granted a directed verdict and, secondly, that the statute is unconstitutionally

vague since it does not sufficiently specify what is and is not prohibited.

Defendant's first argument is that since: 1) there was no evidence that any laborers or materialmen were "unpaid", 2) there was no evidence that the defendant was liable to any laborer or material-man, and 3) there was no evidence that defendant appropriated the Bundy's downpayment to his own use, that there was no evidence of any violation of the statute and that he should have been granted a directed verdict.

There was ample evidence to show the deposit of the Bundy check in an overdrawn Miller general account and that the account was again overdrawn the next day. As the trial court concluded in denying defendant's motion for a directed verdict:

"I think there has been evidence that this money was not used for the purpose for which it was supposed to be used, namely to pay for material for the particular job."

A directed verdict of acquittal may be granted only where "there is no evidence at all, either direct or circumstantial, on each material element of the offense charged". *People v Hodo,* 51 Mich App 628, 639; 215 NW2d 733 (1974), *People v Brewer,* 60 Mich App 517, 521; 231 NW2d 375 (1975). Clearly the bank records indicated the use of the Bundy funds by defendant.

The more important question centers on defendant's interpretation that there can be no violation of the act where no materialmen or laborers are "unpaid". Essentially defendant's interpretation would allow a contractor to do anything he wished with a customer's money so long as the contractor was not legally obligated to pay any laborers, subcontractors or materialmen. Such an interpre-

tation would undermine both the purpose and express language of the statute.

A Sixth Circuit opinion involving the application of the statute to municipal construction projects indicates the history of the statute is "obscure". *General Insurance Co of America v Lamar Corp,* 482 F2d 856, 860 (CA 6, 1973). It was originally passed in 1931 as a depression-era measure to afford additional protection to subcontractors and materialmen.

"During the boom period of the 1920's, speculative builders often undertook to construct projects too large for their available capital to finance, and they frequently paid suppliers and materialmen on older projects with funds received as payments on more current operations. With the advent of the crash of 1929 and the consequent widespread insolvency of many building contractors, these pyramided empires also collapsed and many subcontractors and suppliers were never paid. Subcontractors and materialmen on private projects were left only with mechanics' liens as remedies, and these were often ineffective." *General Ins Co* at 860. Citing Grossman, *Trust and Penal Provisions of the New York State Mechanics' Lien Law,* 5 Brooklyn L Rev 14, 16–22 (1935).

See *National Bank of Detroit v Eames & Brown, Inc,* 396 Mich 611, 619–620; 242 NW2d 412 (1976). In light of this history, it is clear that the design of the act is to prevent contractors from juggling funds between unrelated projects. By imposing a trust as to monies paid the contractor, the statute ensures that funds for a particular project will be used for that project alone.

The statutory language also indicates that the trust is imposed as to anticipated future costs of a particular project. In MCLA 570.152; MSA 26.332

the language clearly states that the trust funds must be used to *"first"* pay laborers, subcontractors and materialmen. Further that section specifically contemplates future obligations by the use of the *"become liable"* language. In MCLA 570.153; MSA 26.333, evidence of intent to defraud is shown by the appropriation of funds paid to the contractor "before the payment by him of all *moneys* due or so *to become due"*. (Emphasis supplied.)

Defendant hinges his argument on the fact that technically no one was "unpaid" at the time the Bundy downpayment was used. This is because no one was under contract to do any work on the Bundy pool. In construing an arguably ambiguous statute, we look to the spirit and purpose of the legislation to give it a reasonable construction. *Lincoln Park Detention Officers v Lincoln Park,* 76 Mich App 358; 256 NW2d 593 (1977), *Royal Oak School District v Schulman,* 68 Mich App 589, 593; 243 NW2d 673 (1976). Because the building contract fund act is a remedial statute, designed to protect people of the state from fraud in the construction industry, we construe it liberally for the advancement of the remedy. *People v Bandy,* 35 Mich App 53, 57; 192 NW2d 115 (1971). In light of the statutory purpose and the statutory language referring to future obligations of the contractor, we hold that a trust is imposed as to funds which will be needed to pay laborers, subcontractors or materialmen who will have to be hired to complete the particular construction project. In this sense the laborers or materialmen necessary to complete the Bundy pool were "unpaid". To rule any other way would allow only the most unscrupulous offenders to escape the statutory prohibition—allowing those who have done no work or

ordered no materials whatever to claim the statute was not violated since no one was "unpaid".

We find that since the prosecution presented evidence on every element of the statutory violation, defendant's motion for a directed verdict was properly denied.

Defendant's second attack is on the constitutionality of the act. Primarily defendant claims that because the statute does not inform a person of which actions are permitted and which are prohibited, the statute is void for vagueness. The constitutionality of the statute was never raised by defendant at the trial court level and this generally precludes appellate review. See *People v Penn,* 70 Mich App 638, 642; 247 NW2d 575 (1976). Because this is the first time the constitutionality of the 1931 statute has been challenged we address it now.

Defendant complains that the statute creating a trust fund does not dictate how the contractor is to deal with such funds; specifically, defendant contends that the statute does not prohibit co-mingling of funds, does not require establishment of a trust account for deposited funds, and does not require separate trust accounts for each job.

The standard for determining whether a criminal statute is void for vagueness is stated in *People v Herron,* 68 Mich App 381, 382; 242 NW2d 584 (1976):

"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Lanzetta v New Jersey,* 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939)."

We believe the statute is quite clear. It requires

monies received for a construction project to be expended for that project. Once the costs of the project are covered, the builder may use the surplus or profit. The method for accomplishing the statutory purpose is the establishment of a trust for the benefit of the laborers, subcontractors or materialmen, as well as the person who pays for the project.

The fact that the Legislature has not specified every conceivable type of practice which is permitted or prohibited does not render a statute unconstitutionally vague. See *Herron, supra,* at 383, citing *United States v Petrillo,* 332 US 1; 67 S Ct 1538; 91 L Ed 1877 (1947). As to monies paid, a trust is established and the contractor is the trustee. The primary duty of the trustee is to ensure that trust funds are spent on the particular project for which the trust funds were deposited. As trustee, the contractor owes a fiduciary duty to the beneficiaries to "exercise a proper and honest judgment considering the nature and object of the trust". *Chambers v Chambers,* 207 Mich 129, 136; 173 NW 367 (1919). While the prudent contractor will probably maintain individual accounts for particular projects and maintain careful records of transactions, we do not believe the statute mandates any particular form or procedures in handling the trust funds. Allowing the contractor some measure of discretion in handling the trust funds does not render the statute unconstitutionally vague.

In the instant case the Bundy check was deposited one day in an overdrawn account and the account was again overdrawn the next day. This falls far short of even minimal standards of fiduciary conduct.

Defendant raises several other allegations of error which can be disposed of summarily.

Defendant contends the trial court erred by allowing testimony of unendorsed rebuttal witnesses who testified as to similar acts of defendant. The prosecutor must endorse all witnesses on the information, MCLA 767.40; MSA 28.980, but this requirement applies only to *res gestae* witnesses. *People v Phillips,* 75 Mich App 690; 255 NW2d 733 (1977), *People v Rimson,* 63 Mich App 1, 3; 233 NW2d 867 (1975). The unsatisfied Miller customers called in rebuttal were not in any sense res gestae witnesses and their testimony was admissible under the "similar acts statute", MCLA 768.27; MSA 28.1050. Rebuttal evidence is broadly defined and whether the rebuttal evidence could have been offered earlier is within the trial judge's discretion. *People v DeLano,* 318 Mich 557, 570; 28 NW2d 909 (1947), quoting from *People v Utter,* 217 Mich 74; 185 NW 830 (1921). Since intent to defraud is an element of the crime, the trial judge properly allowed the rebuttal testimony as to similar acts in view of defendant's assertions that he had no intent to defraud the Bundy's.

Next, defendant contends the prosecutor's failure to subpoena witnesses for the defense constitutes reversible error. Defendant's four-sentence argument in his brief is not very illuminating. He seems to confuse the duty of the prosecutor to produce res gestae witnesses with some supposed duty of the prosecutor to subpoena defense witnesses. Defendant's brief neither specifies which witnesses he believes the prosecutor should have subpoenaed[1] nor any statutory or common law authority which compels a prosecutor to aid re-

---

[1] Our review of the record indicates that perhaps defendant believes the prosecutor should have subpoenaed a "Mr. Roberts" who allegedly attempted to deliver the pool to the Bundys. Since "delivery" is not pertinent to the statutory violation of misappropriation of funds, Mr. Roberts would not be a res gestae witness subject to production by the prosecutor.

tained counsel in subpoenaing witnesses. Perhaps defendant is looking to MCLA 767.32; MSA 28.972 which provides the county clerk shall issue subpoenas free of charge for defendant or MCLA 775.15; MSA 28.1252 which provides trial court aid when an indigent defendant requires help in obtaining witnesses. It appears defendant made no request of the trial court nor, since defendant had retained counsel, that he was indigent.

Defendant alleges error was committed when the prosecutor called substituted bank representatives instead of the endorsed bank representatives. Actually it was the properly endorsed bank records that were at issue and the substituted representatives possessed equal knowledge of the records. The prosecutor used due diligence to produce the endorsed witnesses, *Rimson, supra,* at 3, and after the substitutes explained why they were appearing, defense counsel failed to object to their appearance or testimony and he cross-examined both representatives. Defendant's assignment of error is without merit.

Defendant argues the trial court erred by improperly excluding ten business related documents. The records were excluded on the grounds of lack of relevance, not, as defendant asserts, on the grounds that they were improper business records. The determination of relevance is within the sound discretion of the trial judge, *Rimson, supra,* at 4, and we find no abuse of discretion.

Defendant raises two other allegations of error but we find them so totally without merit that they do not warrant discussion.

Affirmed.