PEOPLE v WOODS

Docket No. 142049. Submitted February 4, 1993, at Detroit. Decided
    June 22, 1993, at 9:05 A.M.

Sylvester Woods was charged in the Detroit Recorder's Court
    under the used motor vehicle parts transaction act, MCL
    257.1351 *et seq.*; MSA 9.2705(21) *et seq.*, with six felony counts
    of failing to record used car parts transactions, two misde-
    meanor counts of failing to keep a vehicle repair facility open
    for police inspection, and two misdemeanor counts of failing to
    keep records required of a dealer for at least one year. After
    the prosecution dismissed three of the felony counts, the defen-
    dant moved to quash the rest of the information. The court,
    Michael F. Sapala, J., denied the motion. The defendant ap-
    pealed by leave granted.

The Court of Appeals *held:*

The used motor vehicle parts transaction act applies to any
    person, corporation, partnership, or association that in whole or
    in part engages in the ordinary course of repeated and recur-
    rent transactions of buying or receiving used motor vehicle
    parts from persons other than a licensee. The act defines "used
    motor vehicle part" to include any major component part of a
    late model motor vehicle, defines "major component part" to
    include an engine or transmission, and defines "late model
    vehicle" as a motor vehicle manufactured in the current model
    year or the five model years immediately preceding the current
    model year.

In this case, binding over the defendant constituted an abuse
    of the examining magistrate's discretion. The prosecution failed
    to establish at preliminary examination that the defendant
    repeatedly bought or received used motor vehicle parts from
    persons other than a licensee so as to make him subject to the
    used motor vehicle parts transaction act, or that the automo-
    bile engines at issue were from late model vehicles at the time
    of their alleged purchase or receipt by the defendant so as to
    make him subject to the record-keeping requirements of the
    act.

Reversed and remanded.

*John D. O'Hair,* Prosecuting Attorney, *Timothy*

*A. Baughman,* Chief of the Criminal Division, Research, Training, and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

*Bell & Gardner, P.C.* (by *James W. McGinnis*), for the defendant.

Before: NEFF, P.J., and GRIBBS and BRENNAN, JJ.

PER CURIAM. Defendant appeals by leave granted from an order of the Detroit Recorder's Court denying his motion to quash an information charging him with various offenses under the used motor vehicle parts transaction act, MCL 257.1351 *et seq.*; MSA 9.2705(21) *et seq.* The act went into effect on March 31, 1987. Defendant was charged with six felony counts of failing to record used car parts transactions, MCL 257.1355(a); MSA 9.2705(25)(a), two misdemeanor counts of failing to keep a vehicle repair facility open for police inspection as required by MCL 257.1352(3); MSA 9.2705(22)(3), MCL 257.1354(1); MSA 9.2705(24)(1), and two misdemeanor counts of failure to keep records required of a dealer for at least one year as required by MCL 257.1352(4); MSA 9.2705(22) (4), MCL 257.1354(1); MSA 9.2705(24)(1). Three felony counts related to the failure to record transactions involving transmissions, and three felony counts related to the failure to record transactions involving engines. We reverse.

I

Investigator Dennis Bielskis of the police auto theft section testified at defendant's preliminary examination that, on February 19, 1991, while he and four other officers were conducting routine inspections, they went to the adjoining offices of

Brooks Auto Repair and Richardson's Collision. The licenses for both facilities were held in defendant's name. Defendant was not on the premises when the officers arrived. While Bielskis and the other officers waited for defendant's return, Bielskis noted several whole vehicles and several engines and transmissions, including a 1984 Chevrolet engine, a 1983 Buick engine, a 1983 Oldsmobile engine, a 1983 Ford transmission, a 1974 Oldsmobile transmission, and a 1979 Ford transmission. Bielskis saw a stack of invoices on a desk, but was not allowed to examine the invoices in defendant's absence.

When defendant arrived, Bielskis asked to see the records for each business. Defendant informed him that the licenses were on the wall, but refused to give him any more information. Bielskis asked to see the "police book," which is a chronological listing of titles of vehicles that are purchased, including parts removed after purchase in order to repair a vehicle. He also asked to see the "major component parts book," which is a listing of major auto components purchased, including the date of purchase and the dealer or place from whom such components were purchased, whether the component was put into another vehicle, the selling price of the component, and the name of the person to whom the component was sold. Defendant again told Bielskis that the licenses were on the wall, left the premises, and did not return. Bielskis was never shown the police book, the major components parts book, or any books of the business. He claimed that defendant refused to give them to him.

While being cross-examined during the preliminary examination, Bielskis testified that he knew that defendant had been the owner of Brooks Auto Repair since at least August 16, 1990, because

defendant had been issued an unspecified violation by the licensing agency on that date. He also testified that defendant obtained a license for Richardson's Collision on April 4, 1986. He further testified that he believed that defendant had owned both businesses since 1985.

Bielskis admitted at the preliminary hearing that he had no knowledge of when the engines and transmissions on the premises at the time of the inspection had been purchased, who had purchased them, or from whom they had been purchased. Bielskis admitted that, because he did not see any books of the business, he did not know whether defendant had acquired or sold any vehicles or parts during the time that the act under which defendant was charged was in effect.

When the prosecution moved to bind defendant over on the charges, defense counsel argued that there had been no showing that defendant had engaged in the type of purchase or receipt of used parts that would bring him within the scope of the act and that there had been no showing that the parts had been purchased or received after the effective date of the act. The prosecutor responded that defendant's businesses were licensed motor vehicle repair facilities to which the act applies. The prosecutor further argued that, under a separate statute, MCL 257.1318; MSA 9.1720(18), repair facilities have been required since 1975 to maintain records of purchased or acquired used auto parts, and that defendant's failure to allow inspection of those records violates the act. The examining magistrate found that the charged offenses had been committed and were "current," and that there was probable cause to believe that defendant had committed them.

In Recorder's Court, defendant filed a motion to quash the information on the basis that the prose-

cutor had failed to show that defendant was a "dealer" for purposes of the act, that defendant had engaged in a used part transaction after the effective date of the act, or that defendant had purchased the used parts from a person other than a licensee. The trial court denied his motion.

Defendant filed a motion for reconsideration on the basis that the used parts in question were not covered by the act because they were not from late model vehicles. The prosecutor thereafter dismissed the three felony counts related to the three transmissions. The trial court entered written orders denying the motions to quash and for reconsideration.

Defendant thereafter moved in this Court for leave to appeal, immediate consideration, and a stay of proceedings. This Court granted these motions. Defendant also moved for peremptory reversal pursuant to MCR 7.211(C)(4), but this Court denied the motion.

II

Defendant contends that the trial court erred in denying his motion to quash the information because the prosecutor failed to present any evidence regarding various elements of the charged offenses.

A

A defendant must be bound over for trial if evidence is presented at the preliminary examination that a felony has been committed and there is probable cause to believe that the defendant was the perpetrator. MCL 766.13; MSA 28.931; MCR 6.110(E); *People v Coddington,* 188 Mich App 584, 591; 470 NW2d 478 (1991). At the preliminary examination, the prosecutor is not required to

prove each element beyond a reasonable doubt. However, there must be some evidence from which these elements can be inferred. *Id.* Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify binding over a defendant. *People v Drayton,* 168 Mich App 174, 176; 423 NW2d 606 (1988).

Probable cause to believe that the defendant committed the crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious person in the belief that the accused is guilty of the offense charged. *People v Vasher,* 167 Mich App 452, 456; 423 NW2d 40 (1988). This Court will not substitute its judgment for that of the examining magistrate unless an abuse of discretion is apparent. *Codding-ton, supra.* The standard for reviewing a decision for abuse of discretion is narrow; the result must have been so violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or an exercise of passion or bias. *People v Talley,* 410 Mich 378, 387; 301 NW2d 809 (1981).

B

The act under which defendant was charged imposes certain recording requirements on "dealers" or "agents" employed by dealers. The felony statute under which defendant was charged states in pertinent part:

A dealer or agent who does any of the following is guilty of a felony, punishable by imprisonment for not more than 2 years, or a fine of $5,000.00, or both:

(a) Totally fails to record a transaction on a record of transaction form as required by section 2. [MCL 257.1355; MSA 9.2705(25).]

The misdemeanor statute under which defendant was charged states in pertinent part:

(1) A dealer who knowingly violates section 2(3), (4), or (5) is guilty of a misdemeanor, punishable by imprisonment for not more than 1 year, or a fine of $1,000.00, or both. [MCL 257.1354; MSA 9.2705(24).]

Section 2 of the act requires dealers to maintain a permanent record of each transaction concerning the buying or receiving of any used motor vehicle part from a person other than a licensee. It provides in pertinent part:

(1) A *dealer* shall maintain a *permanent record* of each transaction concerning the buying or receiving of any *used motor vehicle part* from a *person other than a licensee,* on record of transaction forms provided for in subsection (5), legibly written in ink in the English language.

\* \* \*

(3) The record of transaction forms of a dealer and each used motor vehicle part received by a dealer as the result of a transaction shall be open to an inspection by the local police agency and the Michigan state police at all times during the ordinary business hours of the dealer. As a condition of doing business, a dealer shall be considered to have given consent to the inspection prescribed by this subsection. The record of transaction forms of a dealer shall not be open to inspection by the general public.

(4) *Each record of a transaction shall be retained by the dealer for not less than 1 year* after the transaction to which the record pertains. A dealer who goes out of business or changes his or her business address to another local jurisdiction either within or out of this state shall transmit to the local police agency the records of all transactions made by the dealer not more than 1 year before his or her closing or moving. *After a period of 1 year from the date of the transaction, if a police investigation concerning a used motor vehi-*

*cle part described on the record of transaction has not occurred, the dealer and local police agency shall destroy, and not keep a permanent record of, the records of the transaction.*

(5) The form of the record of transaction shall be 8½ by 11 inches in size and shall be as follows:

"Record of Transaction

\#_____
(Transaction number printed
on the form)

(1) Description of Property_____
_____
_____
_____
_____

(2)_____
(Vehicle Identification Number)

(3) _____
(State of Origin)

(4) _____ 19 \_\_
(Date)

(5) _____
(Name of Dealer/Employee)

(6)_____, _____, 19\_\_
(Name of Customer)          (Date of Birth)

_____          _____
(Driver's License No./          (Street Address)
Mich. Personal ID Number)
                                _____
                                (City & State) (Zip)

(7)_____
(Price Paid)

(8)_____
(Check no., bank draft no.,
money order no., or cash)

Thumbprint          _____"
                    (Signature of
                    Customer)

[MCL 257.1352; MSA 9.2705(22); emphasis added.]

To determine whether the prosecutor presented

evidence from which each element of the offenses may be inferred, it is necessary to review § 1 of the act, which contains the definitions of certain terms used throughout the act.

The term "dealer" is defined by § 1(b) of the act:

"Dealer" means any person, corporation, partnership, or association, which, in whole or in part, engages in the ordinary course of repeated and recurrent transactions of buying or receiving *used motor vehicle parts* from *persons other than a licensee.* A dealer shall include any motor vehicle repair facility which engages in repeated and recurrent transactions of buying or receiving used motor vehicle parts from *persons other than a licensee.* Dealer does not include a scrap metal processor who buys or otherwise acquires motor vehicles or motor vehicle component parts for the purpose of processing or selling the metal for remelting. [MCL 257.1351(b); MSA 9.2705(21)(b); emphasis added.]

The term "used motor vehicle part" is defined by § 1(i) of the act:

"Used motor vehicle part" means any *major component part,* dashboard, radio, stereo, or seat of a *late model motor vehicle* for which a certificate of title and registration plate have been issued to a consumer or dealer. [MCL 257.1351(i); MSA 9.2705(21)(i).]

The term "major component part" is defined by § 1(e) of the act:

"Major component part" means 1 of the following subassemblies of a motor vehicle regardless of its actual market value: . . . engine; transmission . . . . [MCL 257.1351(e); MSA 9.2705(21)(e).]

The term "late model vehicle" is defined by § 1(c) of the act:

> "Late model vehicle" means a motor vehicle manufactured in the current model year or the 5 model years immediately preceding the current model year. [MCL 257.1351(c); MSA 9.2705(21)(c).]

C

Defendant claims that the prosecutor failed to produce at the preliminary examination any evidence that defendant was a dealer. He claims that the evidence only established that he received a license to operate Brooks Auto Repair in 1990 and Richardson's Collision in 1986. He further claims there is no evidence that he repeatedly received or purchased used motor vehicle parts and that there is no evidence of any transactions by him. The prosecutor argues that defendant is a dealer because his businesses were licensed by the Secretary of State and because his facilities had vehicles under repair and had used parts lying around.

To impose liability for a violation of the act, it is not enough to show that defendant operates a motor vehicle repair facility with an inventory of used parts. Rather, in order to impose liability on a defendant, the defendant must be a dealer as defined in the act and must engage in repeated and recurrent transactions of buying or receiving used motor vehicle parts from persons other than a licensee. Here, there was no evidence presented at the preliminary examination that defendant or his businesses ever purchased or received any used parts from a person other than a licensee or that defendant engages in the ordinary course of repeated and recurrent transactions of that nature.

Defendant also argues that the prosecutor failed

to present any evidence that the parts in question were acquired by him after the effective date of the act or after August 1990, the date he acquired the license to operate Brooks Auto Repair. He claims that no evidence was presented to show that he had acquired any used auto parts at a time when he would have been subject to the statutory requirements. The prosecutor's response is that defendant's alleged illegal conduct in refusing to allow the inspection of his books frustrated the inspector's ability to determine whether there was a basis for charging a failure to record any used parts transactions. The prosecutor essentially asserts that defendant should not be allowed to profit from his alleged violation of the duty to allow inspection of his records, thereby frustrating the purpose of the act. The prosecutor further asserts that fairness dictates that defendant's conduct be deemed to create a question of fact for trial with regard to when and how the parts in question were acquired.

Presumably, the same type of reasoning could be applied to excuse the prosecutor's failure to present any evidence that defendant is a dealer who regularly purchases or receives used parts from persons other than licensees, because proof of such activity may be contained in the records that defendant withheld from inspection. Essentially, the prosecutor's position simply begs the questions whether defendant is a dealer who under MCL 257.1352(3); MSA 9.2705(22)(3) is obligated to allow police inspection of the records of used parts transaction forms on his premises and whether any crime in fact has been committed in this case.

D

Nothing in the act requires inspection of the

"police books" or invoices sought to be inspected here, but only those specified transaction forms generated pursuant to the act. If defendant never received the parts in question in a transaction that is covered by the act, or if defendant does not engage in repeated or recurrent transactions of that type, no obligation to record, retain, or allow inspection of such records exists under the act. Defendant may have an obligation to maintain and allow inspection of certain records under the Motor Vehicle Service and Repair Act, MCL 257.1301 *et seq.*; MSA 9.1720(1) *et seq.* For example, as noted by the prosecutor during oral argument before the district court, § 18 of that act requires licensed motor vehicle repair facilities to maintain for inspection police books recording the acquisition of used parts from late model vehicles. However, defendant has not been charged with violation of that statute. Indeed, it is questionable whether there can be any criminal prosecution under that statute.

As a practical matter, inspection of plaintiff's used parts transaction forms, if there are any, would not provide any proof of the alleged felony violations in this case because only the purchaser receipt of a "used motor vehicle part" need be recorded under the act. The definitional language of MCL 257.1351; MSA 9.2705(21), subsections (c) and (i), provides that such parts must come from a "late model vehicle," meaning a motor vehicle manufactured in the current model year or the five model years immediately preceding the current model year. Presumably, the current model year refers to the year in which the transaction is made. Because the parts involved in this case are 1983 and 1984 model engines, they would only be parts covered by the act if they were received or purchased no later than 1988 and 1989 respec-

tively. If the parts were purchased in 1990, for example, the parts would then be too old to be covered by the act because the vehicles from which they were taken would not fall within the definition of a "late model vehicle." Furthermore, although the act refers to maintaining a "permanent" record of each transaction, MCL 257.1352(4); MSA 9.2705(22)(4) only requires retention of such records for not less than one year after the transaction. In fact, the last sentence of that subsection appears to mandate the destruction of the transaction forms after one year where there has been no police investigation regarding any of the acquired parts. Thus, even if defendant had fully disclosed all the transaction forms the act required to be kept at the time of the February 1991 inspection, those records would not cover the acquisition of parts before 1990. Moreover, even if the police were able to discover through an examination of defendant's police books or invoices that the parts were acquired before 1990, and thus were parts covered by the act at the time of purchase, it would still be impossible to prove, on the basis of defendant's records, that defendant totally failed to record a transaction when the part was purchased as required by the act, because by the time of the inspection, the pre-1990 records were no longer required to be kept available for inspection.

E

It is clear that the prosecutor would not be able to show that defendant committed the three remaining felony charges involving the 1983 and 1984 engines, even if the matter were remanded to the examining magistrate for the taking of additional proofs with regard to whether defendant is a "dealer," as defined by the act. However, in

theory, defendant still could be prosecuted on the misdemeanor charges for failing to retain or allow inspection of records, assuming that the prosecutor can establish that defendant is a dealer who engages in regular and repeated acquisitions of used parts from persons other than licensees. Arguably, defendant may still have an obligation to disclose his transaction records, even if the disclosure is simply to show that no covered transactions had been made in the prior twelve months.

III

We reverse the Recorder's Court's denial of defendant's motion to quash the information without prejudice to the prosecution.

Reversed and remanded. We do not retain jurisdiction.