PEOPLE v WHIPPLE

Docket No. 155561. Submitted October 14, 1993, at Marquette. Decided November 15, 1993, at 9:20 A.M.

Kenneth Whipple, a building contractor, was charged in the 8th District Court with fraudulently retaining or using monies paid to him for a construction project. Following a preliminary examination, the court, Kenneth E. Long, J., denied the prosecution's motion to bind over the defendant, ruling that, in the absence of any evidence indicating what the defendant did with the monies at issue aside from not paying subcontractors, the element of appropriation was not established. The Kalamazoo Circuit Court, William G. Schma, J., affirmed on appeal. The prosecution appealed by leave granted.

The Court of Appeals *held:*

The payment of construction funds to a contractor and the subsequent failure of that contractor to pay laborers, subcontractors, materialmen, or others entitled to payment give rise to a presumption of appropriation for purposes of the statute that makes it a felony for a contractor to fraudulently retain or use such funds, MCL 570.152; MSA 26.332. If, as in this case, such a presumption is not rebutted at the preliminary examination, the defendant must be bound over for trial as charged.

Reversed and remanded for further proceedings.

CRIMINAL LAW — UNLAWFUL RETENTION OR USE OF CONSTRUCTION FUNDS.

A building contractor is presumed to have unlawfully retained or used funds paid for a construction project upon proof that construction funds were paid to the contractor and that the contractor subsequently failed to pay subcontractors, materialmen, or others entitled to payment in connection with the project (MCL 570.152; MSA 26.332).

*Frank J. Kelley,* Attorney General, *Thomas L.*

REFERENCES

Am Jur 2d, Embezzlement §§ 23, 53, 54, 56.

Validity and construction of statute providing criminal penalties for failure of contractor who has received payment from owner to pay laborers or materialmen. 78 ALR3d 563.

*Casey,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*James D. Hills,* for the defendant.

Before: SAWYER, P.J., and GRIFFIN and R. M. PAJTAS,* JJ.

GRIFFIN, J. The people appeal by leave granted an order of the Kalamazoo Circuit Court affirming an order of the 8th District Court dismissing a charge against defendant of fraudulent retention or use of building contract funds, MCL 570.152; MSA 26.332. We reverse and reinstate the charge. In doing so, we hold that a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the subsequent failure of the contractor to pay laborers, subcontractors, materialmen, or others entitled to payment.

I

This case arises out of a building contract entered into by James Laure and Abode Management for an addition to Laure's residence. Laure negotiated the contract with defendant, who acted in his capacity as sole proprietor of Abode.[1] The terms of the contract required that Laure pay defendant a total price of $35,437, with an initial payment of $14,000 due on the date the contract

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Our holding is premised on the assumption that Abode Management is a proprietorship rather than a corporation. The lower court record is unclear with respect to the status of Abode Management. We recognize that our analysis may not be applicable to officers of a corporate contractor. See *Conger v State,* 130 So 2d 292 (Fla App, 1961); *Fiske v State,* 106 So 2d 586 (Fla App, 1958). Contra *State v Shouse,* 177 So 2d 724 (Fla App, 1965).

was signed. On August 14, 1989, defendant received a check from Laure for the initial $14,000. After the framing of the addition began, Laure paid defendant an additional $10,000. Thereafter, defendant was paid $1,487.50 to cover the costs of changes in the original construction plans.

Defendant's work on the addition ceased on November 11, 1989. Although the foundation had been finished, the above-ground work remained uncompleted. Eventually, Laure hired defendant's project manager to complete the addition.

Defendant was subsequently charged with fraudulent retention or use of building contract funds in violation of MCL 570.151 *et seq.*; MSA 26.331 *et seq.* Testimony at the preliminary examination established that Laure paid defendant $25,487.50 pursuant to the contract. Further, the prosecution presented evidence that defendant failed to pay subcontractors who worked on the construction project. Defendant offered no explanation for what he did with the $25,487.50 or why he did not pay the subcontractors. In the words of defendant's brief:

> The prosecuting attorney presented only evidence that some money was paid to Mr. Whipple and that some people were not paid. The prosecuting attorney admitted that the people had not presented any evidence of what Mr. Whipple did with the money.

At the conclusion of the preliminary examination, the district judge concluded that defendant had been paid and that "there's no question in this case that he [defendant] did not pay some contractors." However, the district court refused to bind over defendant for the fraudulent retention or use

of building contract funds.[2] The district court found that the evidence was insufficient to establish probable cause with respect to the "appropriation" element of the crime.

On appeal by the people, the circuit court affirmed. The circuit court agreed with the district court that the prosecutor failed to present any evidence that defendant either retained or used the funds for some purpose other than to pay for the labor performed and the materials furnished in the construction. In essence, the lower courts held that it was necessary for the prosecution to introduce evidence regarding "what the defendant did with the money" before appropriation could be inferred. We disagree and reverse.

II

The district court must bind over a defendant if the evidence presented at the preliminary examination establishes that a felony has been committed and there is probable cause to believe that the defendant committed the crime. MCL 766.13; MSA 28.931; *People v Hill,* 433 Mich 464, 469; 446 NW2d 140 (1989). We review for abuse of discretion a district court's decision to bind over a defendant. *People v Thomas,* 438 Mich 448, 452; 475 NW2d 288 (1991). Therefore, in assessing the circuit court's decision to affirm the decision of the district court, we must determine whether the district court abused its discretion in concluding that there was not probable cause to believe defendant committed the charged offense. *People v Neal,* 201 Mich App 650, 654; 506 NW2d 618 (1993); *People v Fiedler,* 194 Mich App 682, 692-693; 487 NW2d 831 (1992). At the preliminary

---

[2] An alternative charge of larceny over $100 was also dismissed, but that dismissal has not been appealed.

examination, the prosecutor is not required to prove each element of the crime beyond a reasonable doubt. Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support the bindover of the defendant if such evidence establishes probable cause. *People v Woods,* 200 Mich App 283, 288; 504 NW2d 24 (1993).

### III

The Michigan builders' trust fund act (MBTFA), MCL 570.151 *et seq.*; MSA 26.331 *et seq.*, provides for both a civil and a criminal remedy. *Weathervane Window, Inc v White Lake Construction Co,* 192 Mich App 316, 325; 480 NW2d 337 (1991); *James Lumber Co, Inc v J & S Construction, Inc,* 107 Mich App 793, 795; 309 NW2d 925 (1981). The purpose of the act "is to create a trust fund for the benefit of materialmen and others under private construction contracts." *Id.* A contractor who is paid under a construction contract holds such funds as a trustee. *People v Miller,* 78 Mich App 336, 340; 259 NW2d 877 (1977).

Section 2 of the MBTFA imposes criminal penalties for the following breach of trust:

Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid . . . . [MCL 570.152; MSA 26.332.]

Further, § 3 specifies that "appropriation" of construction funds by the contractor-trustee is evidence of intent to defraud:

> The appropriation by a contractor, or any sub-contractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud. [MCL 570.153; MSA 26.333.]

Because the MBTFA is a remedial statute, we construe it liberally for the advancement of the remedy. *Weathervane Window, Inc, supra; Miller, supra* at 343. Although "appropriation" is not specifically defined in the MBTFA, we have applied the term in a related factual context.

In *People v Miller, supra,* bank records showed that a contractor deposited a check for the down payment on a building contract into his overdrawn general checking account. *Id.* at 341. The next day the contractor's account was again overdrawn. *Id.* Subsequently, the contractor failed to pay the laborers and materialmen necessary to complete the construction project. In *Miller,* we concluded that such evidence was sufficient to withstand the defendant's motion for a directed verdict. In doing so, we noted the historical context of this depression-era statute and articulated the following statutory purpose:

> In light of this history, it is clear that the design of the act is to prevent contractors from juggling funds between unrelated projects. By imposing a trust as to monies paid the contractor, the statute ensures that funds for a particular project will be used for that project alone. [*Id.* at 342.]

Other jurisdictions with similar statutes have

concluded that a diversion of funds by a contractor is established on facts similar to those of the present case. See *Blanton v Commonwealth,* 562 SW2d 90, 92-93 (Ky App, 1978); *Overstreet v Commonwealth,* 193 Va 104, 108-109; 67 SE2d 875 (1951). Contra *State v Weems,* 595 So 2d 358, 360-361 (La App, 1992); *Lingold v State,* 162 Ga App 486, 487; 292 SE2d 193 (1982).[3]

In *Overstreet, supra,* the Supreme Court of Appeals of Virginia applied a substantially similar statute to a factual situation that is identical to that of the present case. Like the MBTFA, the Virginia statute makes it a crime for any contractor or subcontractor who with intent to defraud retains or uses any construction funds for any purpose other than to pay persons performing labor or furnishing materials for a construction project. The Virginia act specifies that a contractor's use of such proceeds before paying subcontractors is prima facie evidence of an intent to defraud. In *Overstreet,* the evidence showed that the contractor received a check for payment of materials involved in a home improvement project. *Id.* at 108. The contractor endorsed and cashed the check, but failed to pay for some of the materials used in the project. *Id.* Although there was apparently no evidence showing how the contractor spent the construction funds, the Virginia appeals court reasoned that the proofs were sufficient to support a rebuttable presumption that the contractor diverted the proceeds with the intent to defraud. The court noted that in most cases it would be practically impossible for the prosecution to prove exactly how the contractor spent the construction funds:

---

[3] See also anno: *Validity and construction of statute providing criminal penalties for failure of contractor who has received payment from owner to pay laborers or materialmen,* 78 ALR3d 563, 587-590, §§ 8[c], 9.

Thus, the facts make it clear that the defendant used money paid to him under his contract with the property owner before paying all amounts due for material furnished for the improvement and repair of the owner's building. He knew or ought to have known where the funds went, and what he expended them for. Since it was his duty to apply them, or so much thereof, as was necessary, to the payment of labor and material on the Horne job before using them for any other purpose, it became his duty to disclose the nature of his expenditures and to whom payments were made. That information was peculiarly within his knowledge; whereas, it was practically impossible for the Commonwealth to trace the funds after they came into his hands. His failure to disclose the items for which the funds were spent, and the persons to whom they were paid creates a presumption of fact that they were used for some purpose other than paying amounts due or to become due for labor performed or material furnished. Under the statute this constituted *prima facie* evidence of intent to defraud. It then became incumbent upon him to produce evidence to the contrary. [*Id.* at 108-109.]

IV

In the present case, like in *Overstreet,* the evidence is circumstantial regarding the appropriation of the construction funds by defendant. Although the MBTFA does not specify the quantum of proof necessary for a prima facie case, we hold that a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the subsequent failure of the contractor to pay laborers, subcontractors, materialmen, or others entitled to payment. We recognize that defendant need not testify and bears no burden of production or persuasion. However, when an infer-

ence of appropriation arises and remains unrebutted, we conclude that such circumstantial evidence of appropriation is sufficient to support the bindover of the defendant. In order to establish probable cause, it is not necessary for the prosecution to prove "what the defendant did with the money" if a reasonable inference of appropriation is present. The district court abused its discretion by ruling otherwise.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.