LIVONIA BUILDING MATERIALS COMPANY v
HARRISON CONSTRUCTION COMPANY

Docket Nos. 269045, 271021. Submitted July 17, 2007, at Grand Rapids.
    Decided July 26, 2007. Approved for publication August 30, 2007,
    at 9:05 a.m. Leave to appeal denied, 480 Mich ___.

Livonia Building Materials Company (LBM) brought an action in the
    Macomb Circuit Court against Harrison Construction Company;
    its president, Henry G. Bell; and its treasurer, Keith M. Penner,
    alleging violations of the Michigan builder's trust fund act (MB-
    TFA), MCL 570.171 *et seq.*, in connection with unpaid bills for
    building materials that the Harrison Construction Company had
    purchased from LBM. LBM also alleged that Bell and Penner had
    individually guaranteed the debts incurred by the Harrison Con-
    struction Company. The court, Peter J. Maceroni, J., dismissed the
    guaranty claims against Bell and Penner, but allowed the MBTFA
    claim to be decided by the jury, which found Bell and Penner liable.
    The court granted the defendants' motion for judgment notwith-
    standing the verdict (JNOV) on the ground that no evidence
    indicated that the defendants intended to defraud LBM. LBM
    appealed, Penner cross-appealed, and Bell filed a separate appeal.
    The Court of Appeals consolidated the cases.

    The Court of Appeals *held*:

    1. The trial court erred in granting the defendants' motion for
JNOV regarding the MBTFA claim. The defendants' receipt of
payment on projects for which LBM had provided materials and
subsequent failure to pay LBM constitute a violation of the
MBTFA, regardless of the fact that the defendants may not have
appropriated the funds in bad faith.

    2. The trial court properly granted directed verdicts in the
defendants' favor with regard to LBM's claims that Bell and
Penner had personally guaranteed their company's debts to LBM.
Bell signed the document on which LBM relies only once, indicat-
ing that he was signing for the corporation, not for himself, a
conclusion that is further supported by the fact that Bell also left
blank a space for his individual signature. The credit application

that LBM alleged bound Penner individually was signed by an unidentified person other than Penner, and is therefore void under the statute of frauds.

3. The defendants' issues regarding case evaluation sanctions are moot in light of the Court of Appeals resolution of the other issues in this case.

Affirmed in part, reversed in part, and remanded.

1. TRUSTS — BUILDERS' TRUST FUND ACT — VIOLATION — INTENT TO DEFRAUD.

The appropriation by a contractor of any funds received under a building contract before paying those entitled to payment for the project is evidence of intent to defraud, regardless of whether the contractor acted in bad faith in so doing (MCL 570.153).

2. CORPORATIONS — CONTRACTS — SIGNATORIES — INDIVIDUAL LIABILITY.

A corporate officer's decision to sign a document once rather than twice indicates that the officer is signing on behalf of the corporation and does not intend to be held individually liable for obligations the corporation incurs pursuant to the document.

*Brashear Tangora PLC* (by *Carl V. Creighton*) for the Livonia Building Materials Company.

*Kemp, Klein, Umphrey, Endelman & May, P.C.* (by *Robert N. Bassel*) for Henry G. Bell.

*Dean & Fulkerson* (by *Neill T. Riddell*) for Keith M. Penner.

Before: DAVIS, P.J., and HOEKSTRA and DONOFRIO, JJ.

PER CURIAM. Plaintiff, Livonia Building Materials Company (LBM), appeals as of right the trial court's order granting a motion for judgment notwithstanding the verdict (JNOV) in favor of defendants, Henry G. Bell and Keith M. Penner, in this claim involving the Michigan builders' trust fund act (MBTFA), MCL 570.151 *et seq*. Penner cross-appeals, and Bell separately appeals, the same order. Because the trial court properly found that Bell and Penner did not personally

guarantee their companies' debts to LBM, we affirm the trial court's grant of directed verdict on that issue. However, because the record indicates that Bell and Penner acted in direct contravention of the MBTFA, we reverse the trial court's grant of JNOV on the MBTFA claim, and remand for reinstatement of the judgment on the jury's verdict. Because of our resolution of the issues on direct appeal, defendants' issues regarding case evaluation sanctions are moot, and we decline to address them. We affirm in part, reverse in part, and remand.

I

LBM supplies building materials to contractors for use in the construction of commercial and retail buildings. Bell was the president and chief operations officer and Penner was the treasurer and chief financial officer of the Harrison group, which was a longtime customer of LBM. The Harrison group included three entities: the Harrison Construction Company, the Bell Company, and the Dietzel Acquisition Corporation. The Harrison group went out of business in September 2003 when it terminated operations and surrendered its assets to Bank One, a secured creditor. When it ceased operations, the Harrison group had unpaid bills to many creditors, including LBM.

LBM filed a complaint against Harrison Construction, Bell, and Penner in November 2003.[1] The complaint alleged violations of the MBTFA, as well as claims against Bell and Penner, asserting that they had indi-

---

[1] LBM's complaint also included Bank One and another individual, Martin Steudle, as defendants in this action. However, the parties dismissed Steudle and he is not a party to this appeal. Bank One brought a successful motion for summary disposition in the trial court, and is also not a party to this appeal.

vidually guaranteed the Harrison group's obligations to LBM. The matter proceeded to a jury trial in August 2005. At the close of LBM's proofs, defendants brought a motion for directed verdict, arguing that LBM had failed to meet its burden of proof on its MBTFA claim. The trial court took the motion under advisement and continued the trial. At the close of defendants' proofs, the trial court dismissed the guaranty claims against Bell and Penner but allowed the MBTFA claim to go to the jury. The jury returned a unanimous verdict finding Bell liable to LBM under the MBTFA for $60,600 and Penner liable to LBM under the MBTFA for $40,400. In accordance with the jury verdict, the trial court entered judgment in favor of LBM. Thereafter, Bell and Penner filed a motion for JNOV in the trial court, asserting that LBM had failed to present a prima facie case under the MBFTA because it did not demonstrate that defendants had an intent to defraud. After hearing oral argument on the matter, the trial court agreed with defendants and granted the motion. The appeals and cross-appeal followed.

II

LBM argues that the trial court impermissibly granted JNOV where there was ample evidence to support the jury's verdict that Bell and Penner had misappropriated funds held in trust for LBM in contravention of the MBFTA. Bell and Penner counter that the trial court properly granted their motion for JNOV because LBM did not present evidence at trial establishing the elements of its MBFTA claim. This Court reviews a trial court's decision on a motion for JNOV de novo. *Sniecinski v Blue Cross & Blue Shield of Michigan,* 469 Mich 124, 131; 666 NW2d 186 (2003). This Court must view the evidence and all legitimate infer-

ences in the light most favorable to the nonmoving party, *id.*, to determine whether a question of fact existed. *Zantel Marketing Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005). Only if the evidence failed to establish a claim as a matter of law is JNOV appropriate. *Sniecinski, supra* at 131.

The MBTFA imposes a trust on funds paid to contractors and subcontractors for products and services provided under construction contracts. MCL 570.151 *et seq.* The statute provides in its entirety:

> Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

> Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

> Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or oth-

ers entitled to payment, shall be evidence of intent to defraud. [MCL 570.151 to 570.153.]

The MBTFA is a penal statute, but our Supreme Court recognizes a civil cause of action for its violation. *DiPonio Constr Co, Inc v Rosati Masonry Co, Inc*, 246 Mich App 43, 48; 631 NW2d 59 (2001), citing *BF Farnell Co v Monahan*, 377 Mich 552, 555; 141 NW2d 58 (1966). The MBTFA applies to funds paid to contractors and subcontractors for products and services provided to them under their construction contracts. *DiPonio, supra* at 47. Officers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully. *People v Brown*, 239 Mich App 735, 739-740; 610 NW2d 234 (2000). " '[A] corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation.' " *Id.*, quoting *Attorney General v Ankersen*, 148 Mich App 524, 557; 385 NW2d 658 (1986). If a defendant personally misappropriates funds after they are received by the corporation, he or she can be held personally responsible under the MBTFA. *Brown, supra* at 743-744.

To establish a claim under the MBTFA, a plaintiff must show: (1) that the defendant is a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5) that the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project. *HA Smith Lumber &*

*Hardware Co v Decina*, 258 Mich App 419, 426; 670 NW2d 729 (2003), vacated in part on other grds 471 Mich 925 (2004).

Bell and Penner specifically argue that LBM provided no evidence that they diverted any funds received on construction projects for which LBM supplied materials to pay for projects on which it did not supply materials. LBM asserts that it presented evidence that defendants received funds for jobs on which LBM was the supplier, but that defendants did not in turn pay LBM for those jobs. When these parties advanced the same arguments before the trial court during the JNOV arguments, the trial court granted JNOV in favor of Bell and Penner, ruling that "maybe the accounting practices weren't the best, but . . . it appears that the economy was the fault of [LBM] not being paid versus anybody's intent to defraud them." The trial court relied on *James Lumber Co, Inc v J & S Constr Inc*, 107 Mich App 793; 309 NW2d 925 (1981), which held that the plaintiff, and not the debtor, has the burden of proof in MBTFA actions.

But *James Lumber Co* is not binding on this Court. MCR 7.215(J)(1). Moreover, the plain language of the statute indicates that intent to defraud is evidenced simply by "[t]he appropriation by a contractor . . . of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment." MCL 570.153. And this Court has further explained that "a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the subsequent failure of the contractor to pay laborers, subcontractors, materialmen, or others entitled to payment." *People v Whipple*, 202 Mich App 428, 435; 509 NW2d 837 (1993). In *Whipple*, this Court held that the prosecutor in a

criminal matter need not "prove 'what the defendant did with the money' if a reasonable inference of appropriation is present." *Id.* at 436. The same inference is appropriate in a civil action such as this one. *HA Smith Lumber, supra* at 426-427.

In the instant case, it is undisputed that the Harrison group had received payment on projects for which LBM supplied materials, yet the Harrison group did not pay LBM in full for the materials it provided on the various projects. Pursuant to MCL 570.153, *Whipple,* and *HA Smith Lumber,* because the Harrison group received payment for various construction projects and subsequently did not pay LBM, a reasonable inference of appropriation arises. Bell and Penner assert that they rebutted this inference when they presented evidence that jobs for which LBM provided materials were "upside-down," meaning that there was not enough money to pay all the parties who worked on that particular job. Bell and Penner argue that this evidence shows that they did not divert funds in contravention of the MBTFA because the funds were not there as a result of the poor economy at the time or bad business judgment.

But the general assertion that there was not enough money "to go around" is not sufficient to rebut the presumption of misappropriation. Clearly the record shows that monies were coming in on jobs for which LBM provided materials. Penner testified that all funds received on any projects by the three separate entities —the Harrison Construction Company, the Bell Company, and the Dietzel Acquisition Corporation—were placed in the same "controlled disbursement account." Penner admitted at trial that checks paying the entities' bills were then issued from this single account and disbursed on outstanding bills when monies became

available, without regard for the requirements of the MBTFA. Additionally, defendants admit that monies were paid out of the same account to parties other than the protected contractors, laborers, subcontractors, or materialmen. The difficulties posed by a downturn in the economy or poor business acumen do not excuse noncompliance with the MBTFA's obligations in regard to accounting practices and ordering of payment. Although Penner and Bell may not have acted with bad faith and indeed were simply trying to keep their ongoing concern afloat by paying the most urgent outstanding balances, the MBTFA's requirements must still be followed, and defendants were certainly required to pay LBM on its projects when monies came in on those particular projects. But the appropriation of any monies paid to a contractor for building operations before payment of the protected parties—here, the materialman—is evidence of intent to defraud. MCL 570.153. Accordingly, evidence was presented from which the jury could reasonably have concluded that Bell and Penner violated the MBTFA, and the trial court erred when it granted JNOV in their favor.

III

LBM also asserts that the trial court erred when it granted a directed verdict in favor of defendants Bell and Penner on its guaranty claim because there was evidence to support the claim that defendants had signed valid guarantees. Bell and Penner respond that neither of them personally guaranteed Harrison Construction's debts to LBM and the trial court properly granted a directed verdict in their favor. We review a trial court's decision on a motion for a directed verdict de novo. *Sniecinski, supra* at 131. This Court reviews all the evidence presented up to the time of the motion in

the light most favorable to the nonmoving party to determine whether a question of fact existed. *Zantel, supra* at 568.

A

In regard to Bell, LBM points to a document dated January 6, 1988, entitled "Livonia Building Materials Co. . . . New Customer Credit Form and Individual Guarantee" as the basis of its claim. LBM asserts that Bell's signature on the document is an individual guaranty of Harrison Construction's debts to LBM and imposes personal liability for those debts on Bell. Bell responds that his signature on the document was a corporate signature. He testified that when he signed it he did not intend to be personally bound, and that there was no evidence that he intended to be personally bound. The trial court agreed with Bell, stating that it believed Bell's testimony regarding "when he signed it, how he signed it and why he signed it," and concluded that the document was not a personal guaranty. The trial court referenced an unpublished opinion of this Court, *Geresy v Dommert*, unpublished opinion per curiam of the Court of Appeals, issued June 3, 2004 (Docket No. 243468), that held that individual defendants could not be held liable because when they had signed an operating agreement only once, rather than twice, it indicated that they had signed only as officers or members of a corporation, and not as individuals. Although we are not bound by *Geresy*, we find its rationale persuasive.

*Geresy* reasons that

[a]s a general rule, "an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual."

*Salzman Sign Co v Beck*, 176 N E 2d 74, 76 (NY 1961); see also 18B Am Jur 2d, Corporations, § 1838, p 690. In this case, each of the signatories signed the operating agreement only once, and the document makes clear that they did so in their capacities as members . . . , [and] not as individuals. [*Geresy, supra* at slip op p 6.]

Here, the document at issue is signed only once by Bell, and typed under the signature is the title "President." Further, there is another paragraph on the document that states:

In consideration of the extension of credit, I _____, the undersigned, as officer of the above named business, or as duly authorized agent of that business, guarantee the payment to LIVONIA BUILDING MATERIALS CO., of all indebtedness of the above named business, whether heretofore or hereinafter incurred in accordance with the terms and conditions of sale and payment . . . .

The blank spot was not filled in by Bell. It was left completely blank. Our review of the record reveals that Bell signed the document at issue only once, and the document is clear that he did so as president of Harrison Construction Company on behalf of Harrison Construction Company and not as an individual. Accordingly, we conclude that Bell's signature on the document was a corporate signature and that he did not personally guarantee Harrison Construction's debts to LBM. Therefore, the trial court properly granted directed verdict in Bell's favor.

B

In regard to Penner, LBM relies on a document dated March 7, 2002, entitled "Oakland Building Materials[2] Application for Credit" as the basis of its claim. LBM

---

[2] Oakland Building Materials is an entity owned by LBM.

asserts that Penner's signature on a document that contained guaranty language–whether affixed by himself or his employee–acts as an individual guaranty of Harrison Construction's debts to LBM and imposes personal liability on Penner for those debts. It is LBM's position that the trial court erred when it did not allow the jury to consider whether Penner instructed another LBM employee to sign his name on the credit application. LBM specifically argues that the trial court erred because the evidence presented at trial could support a reasonable inference that Penner intended to be personally bound for the debts of Harrison Construction in consideration for LBM's extension of favorable credit terms to Harrison. Penner counters that the directed verdict was proper because there was no direct evidence presented to support a conclusion that Penner authorized the execution of a personal guaranty on his behalf, and further that no reasonable person could infer from the facts presented that Penner had authorized an unidentified third person to execute a personal guaranty obligating him to the payment of his employer's debts.

The trial court agreed with Penner's position and stated as follows:

> I've listened to the testimony and I don't think there's a factual dispute. . . . The proof is not there. I'm looking at it and reviewing Mr. Penner's testimony, I don't see how in the world anybody could make the rational jump that on March 7th of '02, after all these years of business that the plaintiff would ask Mr. Penner for an individual guaranty. I'm not a handwriting expert but I think anybody in this room can tell that that is not his signature and how anybody could even buy or suggest that someone would give somebody the authority to sign his signature on a personal guaranty for thousands, upon thousands, upon thousands of dollars is not rational, nor factual, nor logical and the claim[] [is] hereby dismissed.

Our review of the record reveals that Penner did admit at trial that he would instruct employees to sign his name to certain documents; however, he denied directing anyone to sign his name to a personal guaranty. Penner, in fact, testified that he was not even aware of the existence of the document on which LBM relies until the litigation of this case began. Penner also testified that he would not have signed a personal guaranty in 2002 because the company was already experiencing cash-flow issues. LBM presented testimony from a credit manager, Michael Minko, who stated that in 2002 he faxed a credit application to Penner and another Harrison employee because the Harrison group's accounts were becoming delinquent. Minko testified that he sent out a blank form and it came back to him completed. But neither party presented evidence regarding the identity of the person who purportedly signed Penner's name on the document and remitted it to LBM.

Michigan's statute of frauds provides that "an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise" in cases involving "[a] special promise to answer for the debt, default, or misdoings of another person." MCL 566.132(1)(b). Here, Penner testified that the signature on the credit application was not his, and LBM concedes on appeal that the signature on the credit application is not Penner's signature. The identity of the person who signed Penner's name on the document is unknown. Therefore, pursuant to the requirements of the Michigan statute of frauds, the document is void. MCL 566.132(1)(b). After reviewing the evidence in the light most favorable to the nonmoving party, *Zantel, supra* at

568, we conclude that the evidence presented was insufficient to raise a jury question regarding this issue, and therefore the trial court correctly granted a directed verdict in favor of Penner.

IV

Because our resolution of the foregoing renders defendants' issues regarding case evaluation sanctions moot, we decline to address the merits of defendants' issues on cross-appeal and in the separate claim. *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 139; 393 NW2d 161 (1986).

Affirmed in part, reversed in part, and remanded for reinstatement of the judgment on the jury's verdict. We do not retain jurisdiction.