# STATE OF MICHIGAN

# COURT OF APPEALS

ANDY J. EGAN CO., INC.,

        Plaintiff/Counter-Defendant-
        Appellant/Cross-Appellee,

v

PRO SERVICES, INC. and MICHAEL
VANDEMAELE, JR.,

        Defendants/Counter-Plaintiffs-
        Appellees/Cross-Appellants.

UNPUBLISHED
June 19, 2018

No. 336358
Oakland Circuit Court
LC No. 2010-114555-CK

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

The parties were subcontractors on a paper mill expansion project. Plaintiff Andy J. Egan Co., Inc., designs and manufactures pipe for industrial applications. Pro Services, Inc., installs pipe. Egan and Pro Services entered into two contracts obligating Egan to design, fabricate and deliver pipe for Pro Services to install in a New York paper plant. Pro Services agreed to pay Egan almost two million dollars for its work.

Egan sued Pro Services asserting breach of contract theories and Pro Services counterclaimed on the same ground. Two jury trials ensued. Both parties now raise a myriad of appellate arguments flowing from rulings made before and during the trials. Our resolution of one issue makes it unnecessary to discuss most of the others. The corporate parties' contracts included a broad provision waiving their rights to trial by jury. The trial court refused to enforce this provision. That was error. We reverse and remand for a new trial on all claims save one.

I

We need not describe the circumstances surrounding the parties' disputes in much detail, as most of the facts are not relevant to our disposition of the case. We limit our recap to the details necessary to explain our holdings.

-1-

Egan's first amended complaint stated claims against Pro Services, Keystone Community Bank, and two of Pro Services' corporate officers: Lucas Nienhuis, its Chief Financial Officer, and Michael VandeMaele, Jr., the Chief Executive Officer. Nienhuis and Keystone were dismissed by stipulation. The remaining defendants filed answers, counterclaims, and jury demands.

Despite that Egan pleaded multiple causes of action, at its core this was a breach of contract case. Egan alleged that Pro Services had not fully paid for the pipe that Egan supplied; Pro Services asserted that the pipe was of poor quality and had not been delivered on time. Egan's first amended complaint also averred that Pro Services and VandeMaele violated the Michigan Builder's Trust Fund Act (MBTFA), MCL 570.151 *et seq*., and committed common-law conversion.

Pro Services drafted both contracts.[1] They contained identical provisions titled "Article XIX – DISPUTES" stating in relevant part:

> WAIVER OF JURY TRIAL: The parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Agreement, the relationship of Contractor and Subcontractor, and/or any claim of injury or damage.

One month after Pro Services and VandeMaele filed jury trial demands Egan moved to strike them, contending that Pro Services had contractually waived its right to a jury trial. Pro Services responded that VandeMaele was not a party to the contracts and had not waived *his* jury trial right. Invoking *Mink v Masters*, 204 Mich App 242; 514 NW2d 235 (1994), Pro Services reasoned that "[o]nce one party timely demands a jury trial, all of the other parties in the litigation may rely on that demand without doing anything further – irrespective of whether the other parties would have otherwise waived a right to jury trial." Alternatively, Pro Services contended, its counterclaim for breach of implied contract was not governed by the jury trial waiver, as it sought rescission of the contract itself.

The trial court ruled that *Mink* dictated the result, and that VandeMaele's jury demand "preserves the right to jury trial for all parties to this litigation[.]"

The first jury trial resulted in verdicts in favor of both parties, with direct damage awards to Egan for $1,097,730 to Pro Services for $1,841,468. The jury concluded that Pro Services and VandeMaele did not violate the MBTFA or commit common-law or statutory conversion and awarded Pro Services an additional $1,235,000 in consequential damages.

Egan moved for a new trial regarding the consequential damages award and filed a motion contending that the retrial should be conducted by the bench. The trial court ordered a

---

[1] Technically, these were subcontract agreements. They differed with regard to the date of certain pipe deliveries.

partial retrial focused on consequential damages, but again denied Egan's request for a bench trial. The second jury determined that Pro Services was not entitled to consequential damages. Ultimately the trial court entered judgement in favor of Pro Services in the amount of $1,843,142.76, including damages of $743,738 and attorney fees in the amount of $1,087,374.85.

Egan appeals; Pro Services and VandeMaele have filed cross appeals. In addition to challenging the trial court's jury trial decisions, Egan asserts the trial court improperly: (1) denied its motions for judgment notwithstanding the verdict regarding its claims under the MBTFA; (2) allowed an expert witness to testify regarding Pro Services' damages, and (3) awarded Pro Services $1,087,374 in attorney fees. Pro Services counters that the retrial on consequential damages constituted error, takes issue with the trial court's attorney fee calculation, and complains about several evidentiary rulings and jury instructions.

Because we have determined that the case must be remanded for a bench trial of all issues except one, we will not address the appellate arguments other than those involving the MBTFA.

II

We begin with the provision in the parties' contracts referencing a nonjury trial, which we interpret de novo. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010). Notably, Pro Services' brief on appeal never recites the words of this provision and only mentions its existence in passing. We find this omission telling, as we are hard pressed to imagine language more sweeping and definite. The subcontracts written by Pro Services and signed by Egan unambiguously contemplated that if any disputes related to their subcontract found their way to a courtroom, a jury would not be impaneled to resolve them.

Pro Services insists that despite the clear contractual language ("The parties . . . waive trial by jury in any action, proceeding or counterclaim . . . on any matters whatsoever arising out of or in any way connected with this Agreement, the relationship of Contractor and Subcontractor, and/or any claim of injury or damage."), VandeMaele's presence in the suit permitted the trial court to exercise its discretion and order the entire case submitted to a jury. No case law, court rule, or other precedent supports that argument.

We begin with *Mink v Masters*, the case Pro Services brought to the trial court's attention and the trial court embraced. The defendants in *Mink* failed to comply with a discovery order, and the trial court sanctioned them by entering a default judgment. *Mink*, 204 Mich App at 244. This Court found that the trial court had not abused its discretion in so doing. *Id*. at 245. The defendants further argued that the trial court erred by denying their right to a jury trial on the issue of damages. *Id*. at 245-246. We held that "where it is necessary for the trial court to hold a hearing on the issue of damages, the defendant has a right to a jury trial if that right has been preserved even though the defendant has defaulted." *Id*. at 246. The Court's analysis of the next question—whether the defendants had "preserved" their right to a jury trial—is the fulcrum for Pro Services' argument that it was not bound by the language of its contract with Egan.

The plaintiff in *Mink* filed a demand for a jury trial in the trial court. Rather than submitting their own jury demand, the defendants filed a document styled "Reliance on

Plaintiffs' Jury Demand." *Id*. The *Mink* majority determined that the defendants had "adequately preserved" their right to a jury trial, concluding that "once one party has filed a jury demand, all other parties may rely on that jury demand and need not independently file their own demand for a jury trial." *Id*. The majority summarized:

> Thus, where a plaintiff has filed a jury demand, the defendant need do nothing further to preserve its right to a trial by jury. Rather, any future waiver of a jury trial by the plaintiff can only be done with the defendant's consent. Therefore, we conclude that because defendants had a right to rely upon plaintiff's demand for a jury trial, their right to a jury trial was preserved absent their own waiver of the right to a jury trial. [*Id*. at 247.][2]

*Mink* is readily distinguishable from this case. There was no contractual jury trial waiver involved in *Mink*. Both parties in that case had agreed from the start that their trial would be by jury. This Court's decision hinged on that mutual anticipation. Here, however, the parties contractually agreed that their dispute would not result in a jury trial, and Egan objected to a jury trial at the earliest possible juncture.

The trial court rested its ruling on *Mink*, analogizing VandeMaele's jury trial demand to Mink's, reasoning that just as in *Mink*, any party may rely on another's jury demand. But as we have said, *Mink* supplies an inapt comparison, as VandeMaele and Pro Services entered the litigation on very different footings. VandeMaele was never bound by the contractual jury trial waiver, at least according to Egan.[3] Had Egan sued only VandeMaele, the contractual waiver would have had no effect. But VandeMaele's presence in the case as a codefendant could not

---

[2] Judge Doctoroff concurred in the outcome, but expressed reservations about the breadth of the majority's holding:

> I do not believe it is necessary to decide, as a matter of law, that a defendant may rely upon the jury demand of an opposing party (or any other party for that matter) without taking some affirmative action indicating that the defendant wishes to have a jury trial. Rather, under the circumstances of this case, I believe that defendants have sufficiently preserved their right to a jury trial regarding the issue of damages by filing the "Reliance on Plaintiffs' Jury Demand." [*Id*. at 249 (DOCTOROFF, J., concurring).]

[3] At the hearing on its motion to strike Pro Services' jury demand, Egan conceded VandeMaele's right to have the MBTFA claim asserted against him heard by a jury. We take no position on whether ordinary agency principles would bind VandeMaele to Pro Services' jury trial waiver. The United States Court of Appeals for the Third Circuit has held that "when a valid contractual jury trial waiver provision applies to a signatory corporation, the waiver also applies to nonsignatory directors and officers seeking to invoke the waiver as agents of the corporation." *Tracinda Corp v DaimlerChrysler AG*, 502 F3d 212, 225 (CA 3, 2007). Here, however, Egan relinquished its right to make this argument by proposing that VandeMaele be permitted a jury trial that would be conducted simultaneously with a bench trial of all the other issues.

have negated the subcontracts, and his jury demand did not magically erase the jury trial waiver that Pro Services had inserted in the parties' agreements.

Nor do the court rules supply a ground for nullifying the parties' contract. MCR 2.509 provides, in relevant part:

> **(A) By Jury.** If a jury has been demanded as provided in MCR 2.508, the action or appeal must be designated in the court records as a jury action. The trial of all issues so demanded must be by jury unless
>
> (1) the parties agree otherwise by stipulation in writing or on the record, or
>
> (2) the court on motion or on its own initiative finds that there is no right to trial by jury of some or all of those issues.
>
> **(B) By Court**. Issues for which a trial by jury has not been demanded as provided in MCR 2.508 will be tried by the court. In the absence of a demand for a jury trial of an issue as to which a jury demand might have been made of right, the court in its discretion may order a trial by jury of any or all issues.

This rule protects the right to jury trial, providing that a court must honor a jury trial request. The jury trial waiver contained in the contracts executed by Pro Services and Egan eliminated the rights of those parties to have their cases heard by a jury. We do not interpret the rule to permit a court to override a contractual jury trial waiver, and have found no authority reaching such a result.[4]

"A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). "Courts have long held parties to agreements they make, regardless of the harshness of the results." *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 396; 886 NW2d 906 (2016). The contract prepared by Pro Services and signed by Egan specifically envisioned that if their deal fell through and either party felt aggrieved enough to file a lawsuit, any remedies would emerge from a bench trial.[5] Pro Services has offered no reason that we should overlook the jury trial waiver other than VandeMaele's assertion of his right to a jury trial. And conducting a jury trial on the claims against VandeMaele would not have prevented or even hindered a bench trial on the rest.

We recognize and acknowledge that our ruling means that an enormous quantity of judicial resources has been expended in jury trials that should not have taken place. Although a

---

[4] Pro Services never challenged the legal validity of the jury trial waiver provisions and has not argued that it lacked an intent to be bound by them.

[5] Article XIX also permitted the parties to submit their disputes to arbitration if both agreed. Apparently such agreement was not forthcoming.

compelling consideration, this fact does not permit us to simply disregard the plain language of the parties' contract.

On remand, the parties may stipulate to permit the trial court to render a verdict on the remaining claims based on the court's review of the evidence. If either party objects to this procedure, the case must be assigned to a new judge for a bench trial on all claims other than those against VandeMaele under the MBTFA.[6]

III

Egan contends that the trial court erred by denying its motion for JNOV with respect to its MBTFA claims. We review this argument, too, de novo. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016).

> The appellate court is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted. [*Id.* (quotation marks and citation omitted).]

> Section 2 of the MBTFA provides, in pertinent part, as follows:

> > Any contractor or subcontractor engaged in the building construction business, who, *with intent to defraud*, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court. [MCL 570.152 (emphasis added).]

Likewise, MCL 570.153 provides, in pertinent part, as follows:

> > The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due

---

[6] At oral argument, counsel pointed out that the judge who presided over the first two trials had conducted settlement negotiations with the parties after being informed of the case evaluation award. In a nonjury action, the parties may not reveal the amount of case evaluation award until the judge has rendered judgment. MCR 2.403(N)(4). We take this to mean that a judge aware of the case evaluation award is disqualified from hearing the case in a bench trial.

or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

This Court recognized in *Livonia Bldg Materials Co v Harrison Constr Co*, 276 Mich App 514 518; 742 NW2d 140 (2007), that these statutory provisions mean that a trust is imposed on funds paid to contractors and subcontractors for products and services provided pursuant to construction contracts. Although "[t]he MBTFA is a penal statute, . . . [the Michigan] Supreme Court recognizes a civil cause of action for its violation." *Id*. at 519.

> The MBTFA applies to funds paid to contractors and subcontractors for products and services provided to them pursuant to their construction contracts. *DiPonio Constr Co v Rosati Masonry Co*, 246 Mich App 43, 47; 631 NW2d 59 (2001). . . . Officers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully. *People v Brown*, 239 Mich App 735, 739-740; 610 NW2d 234 (2000). " '[A] corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation.' " *Id*., quoting *Attorney General v Ankersen*, 148 Mich App 524, 557; 385 NW2d 658 (1986). If a defendant personally misappropriates funds after they are received by the corporation, he or she can be held personally responsible under the MBTFA. *Brown*, [239 Mich App] at 743-744. [*Livonia Bldg Materials Co*, 276 Mich App at 519.]

To establish a claim under the MBTFA, a plaintiff must prove that: (1) "the defendant is a contractor or subcontractor engaged in the building construction industry," (2) "the defendant was paid for labor or materials provided on a construction project," (3) "the defendant retained or used those funds, or any part of those funds," (4) the funds were retained, with the intent to defraud, "for any purpose other than to first pay laborers, subcontractors, and materialmen," and (5) "the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project." *Id.* An intent to defraud may be "evidenced simply by '[t]he appropriation by a contractor . . . of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment.' " *Id.* at 520 (alterations in original), quoting MCL 570.153.

In support of its claims that the trial court erred in denying its motion for JNOV on the MBTFA claims, Egan points to the parties' pretrial stipulation of facts reciting that Pro Services had been paid certain amounts by the contractor on the project, and that Keystone Bank periodically "swept" Pro Services' account to pay down Pro Services' line of credit. The stipulation further provided that Egan submitted certain monthly invoices to Pro Services. Egan additionally relies on Nienhuis's testimony that Pro Services paid vendors for jobs other than the paper plant project from its commercial checking account, as well as overhead expenses and other operating expenses. According to Egan, this evidence conclusively established that Pro Services and VandeMaele violated the MBTFA.

We agree that Egan made out a prima facie case. But Pro Services and VandeMaele introduced evidence that the pipe Egan supplied was defective and not delivered in a timely

fashion, thereby rebutting Egan's MBTFA claim. In *Livonia Bldg Materials Co*, 276 Mich App at 521, this Court recognized that a MBTFA defendant has the opportunity to rebut the inference that arises when the defendant receives payment on projects for which a subcontractor provided materials, but does not pay the subcontractor. Viewed in the light most favorable to Pro Services and VandeMaele, the evidence demonstrated factual disputes regarding Pro Services' responsibility to pay Egan under the terms of their contracts, and reasonable minds could reach opposing conclusions as to whether Pro Services and VandeMaele violated the MBTFA. Therefore, the trial court correctly denied Egan's motion for JNOV as to VandeMaele's liability.

Pro Services, however, was not entitled to a jury trial on Egan's MBTFA claim. On remand, Egan may submit this claim, along with the others pleaded against Pro Services in its first amended complaint, for a nonjury trial.

Because we have concluded that Egan is entitled to a new nonjury trial, we decline to address either party's remaining appellate arguments.

We affirm the trial court's judgment as to VandeMaele. We reverse the decision to grant Pro Services' demands for a jury trial, vacate the trial court's judgments as to Pro Services, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, neither may tax costs.

/s/ Thomas C. Cameron
/s/ Elizabeth L. Gleicher