*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

D&R MAINTENANCE MANAGEMENT, INC.,

       Plaintiff/Counterdefendant/Appellee,

v

955 S. MONROE LLC, and ANTHONY PORTER,

       Defendants-Appellants,

and

FWB, INC.,

       Defendant/Counterplaintiff.

UNPUBLISHED
July 28, 2022

No. 357867
Monroe Circuit Court
LC No. 18-140640-CB

---

955 S. MONROE, AVJ GROUP, LLC, and
ANTHONY PORTER,

       Plaintiffs-Appellants,

v

D&R MAINTENANCE MANAGEMENT, INC.,
and JASON D'HERIN,

       Defendants-Appellees.

No. 357879
Monroe Circuit Court
LC No. 18-140688-CB

---

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

-1-

In these consolidated appeals, 955 Monroe, LLC, AVJ Group, LLC, and Anthony Porter (collectively, "the Porter litigants"), appeal as of right the order denying their motion to vacate or modify the arbitration award. We affirm.

## I. BACKGROUND

In May 2016, 955 Monroe entered into a contract with D&R Maintenance Management, Inc., to construct a Jimmy John's franchise from the ground up on land owned by 955 Monroe. Porter is the managing member of both 955 Monroe and AVJ; D&R is owned by Jason D'Herin.[1] The project was not completed as planned, and each side faults the other. In January 2018, D&R filed a complaint against Porter and 955 Monroe alleging breach of contract, unjust enrichment and fraudulent misrepresentation, among other counts.[2] The Porter litigants filed a separate lawsuit against D&R alleging multiple claims, including fraudulent inducement, breach of contract, unjust enrichment and a violation of Michigan Builder's Trust Fund Act (MBTFA), MCL 570.151 *et seq.* for retaining contract funds for purposes other than to complete the project. The trial court consolidated the cases, and the parties stipulated to arbitration of their dispute, as required by their contract.

After discovery was completed, the arbitrator held a three-day hearing with both sides calling witnesses, including experts. The arbitrator issued an award of $58,958 to 955 Monroe, determining that D&R was overpaid that amount. Relevant to this appeal, the arbitrator rejected the claim that D&R violated the MBTFA, reasoning as follows:

> Count IV, violation of the [MBTFA], similarly fails for lack of proof as to a violation of the Act resulting in any damage to 955. There was no basis for Anthony Porter individually or AVJ to claim D&R and D'Herin violated the Act.
>
> The gravamen of a violation of MCL 570.151, is that a party receives funds and then does not utilize those funds to pay their subcontractors, laborers and suppliers. D&R did not maintain a separate bank account for this project. Respondents/Counter Claimants cite no case law that a separate account is required. While the D&R bank records submitted evidence that funds received from 955 were being transferred among various accounts, there was no testimony that D&R or D'Herin retained any funds received on the project.
>
> Jason D'Herin testified that neither D&R or himself personally retained any money from the funds received, nor did 955 present any evidence to the contrary. Chad Kime, CPA, . . . D&R's expert, reviewed the records of D&R and testified that he could account for payments by D&R in excess of $870,000.00. Mr.

---

[1] Although D'Herin is also a party to these lawsuits, for simplicity we will generally refer to D&R only.

[2] D&R also alleged negligence against FWB, Inc., the surveying company for the project. The parties later stipulated to dismiss D&R's claims against FWB, and FWB's counterclaim against D&R.

Harrington, CPA, . . . , Respondents/Counter Claimants' expert, while critical of the method and documents relied upon by Mr. Klime, did not make any determination that D&R retained any funds. There was therefore no violation of the Act.

The Porter litigants moved the trial court to vacate the arbitration award asserting (1) the arbitrator improperly shifted the burden of proof regarding the MBTFA claim, (2) the arbitrator refused to consider evidence material to the controversy, (3) the arbitration hearing was conducted in a manner that substantially prejudiced them, and (4) the arbitration award was based upon miscalculations. The trial court denied the motion, determining that the motion did not identify an error of law by the arbitrator and that the arbitrator did not improperly shift the burden of proof. The court was not persuaded by allegedly contradictory statements made by the arbitrator during the course of the hearing because "those aren't rulings. Those aren't findings." This appeal followed.

## II. ANALYSIS

The Porter litigants contend that the trial court erred by failing to vacate the arbitration award because the arbitrator exceeded his powers, shifted the burden of proof, prejudiced the parties, and refused to hear evidence directly relevant to the case.[3]

A reviewing court's analysis of an arbitration award is extremely limited. *Fette v Peters Constr Co*, 310 Mich App 535, 541; 871 NW2d 877 (2015). The court is not permitted to review an arbitrator's factual findings or the arbitrator's decision on the merits. *Id*. Even if the arbitration award is against the great weight of the evidence or unsupported by substantial evidence, the court may not vacate the award on that basis. *Id*. at 544-545. To vacate an arbitration award because of an error of law, that error must be discernible on the face of the award and "so substantial that, but for the error, the award would have been substantially different." *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (quotation marks and citation omitted). Arbitrators exceed their powers "whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Dohanyos v Detrex Corp*, 217 Mich App 171, 176; 550 NW2d 608 (1996).

A.

The Porter litigants first argue that the arbitrator exceeded his powers by improperly shifting the burden of proof to them with respect to their MBTFA claim.

"The MBTFA imposes a trust on funds paid to contractors and subcontractors for products and services provided under construction contracts." *Livonia Bldg Materials Co v Harrison Const Co*, 276 Mich App 514, 518; 742 NW2d 140 (2007). The act provides in part:

---

[3] We review de novo a trial court's decision to vacate or enforce an arbitration award. *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004).

> Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefore, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use . . . . [MCL 570.152.]

> The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud. [MCL 570.153.]

"The MBTFA is a penal statute, but our Supreme Court recognizes a civil cause of action for its violation." *Livonia Bldg Materials Co*, 276 Mich App at 519. To establish a claim under the MBTFA, the plaintiff must show:

> (1) that the defendant is a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5) that the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project. [*Id*.]

The Porter litigants cite *HA Smith Lumber & Hardware v Decina*, 258 Mich App 419; 670 NW2d 729 (2003), vacated in part on other grounds 471 Mich 925 (2004), for the proposition that there is a burden-shifting approach to MBTFA. In that case, this Court held that evidence that a contractor failed to pay subcontractors allows for a reasonable inference of appropriation for purposes of the MBTFA. *Id*. at 426-427. We did not hold, however, that once such an inference arises, the burden shifts to the contractor to prove that funds were used for proper purposes.

We acknowledge that the arbitrator made comments during the hearing indicating that he would require D&R to show documentation that its subcontractors and suppliers were paid, and that he agreed with the Porter litigants' prehearing brief that the burden had shifted to D&R to negate a violation of the MBTFA. But ultimately, the arbitration award did not place such a burden on D&R and instead determined that the Porter litigants had not established a violation of the MBTFA. It was not a clear error of law for the arbitrator to place the burden of proof on the plaintiffs with respect to this claim.

Even assuming that there is a de facto burden shifting for claims under the MBTFA, the Porter litigants do not appear to have direct evidence that D&R's subcontractors or suppliers were not paid. When asked during the hearing if he was "aware of [] D'Herin retaining any general contractor fees in lieu of paying other contractors or subcontractors," Porter answered, "No." Typically, the plaintiff in a MBTFA case is a subcontractor or supplier that has not been paid. See e.g., *Livonia Bldg Materials Co*, 276 Mich App 514; *HA Smith Lumber & Hardware*, 258 Mich App 419. Here, however, the Porter litigants were not owed payment by D&R for services or goods. Indeed, it is presumably for that reason that the the arbitrator award indicates that the Porter

litigants did not suffer any damages from the alleged MBTFA violation, an issue they do not address on appeal.

In any event, the proofs relied on by the Porter litigants simply do not compel the conclusion that D&R appropriated funds for purposes other than paying subcontractors or suppliers. The Porter litigants primarily rely on bank records showing that large deposits into D&R's account were completely withdrawn within a week a so. They then assert—without any record citation—that none of the transactions withdrawing the funds from the account can be attributed to the project. The arbitrator considered the bank transactions, but concluded that "there was no testimony that D&R or D'Herin retained any funds received on the project."

The Porter litigants also rely on D&R's expert witness, Chad Kime, CPA, in support of their argument. Specifically, they note that Kime testified he could only find proof for $272,315.14 of the payments made to D&R, presumably creating the inference that D&R used those unaccounted-for funds for nonproject purposes. Yet the Porter litigants offer us no evidence establishing that D&R used those other funds for nonproject purposes. Kime's statement reveals only that he was able to find documentation for $272,315.14 of the payments made to D&R, not that D&R definitively used the rest of the payments for nonproject purposes. We acknowledge that the arbitrator stated in the arbitration award that Kime was able to "account for payments by D&R in excess of $870,000.00," seemingly contradicting Kime's testimony and possibly indicating that the isolated testimony relied on by the Porter litigants does not paint the full picture. Regardless, we may not review the arbitrator's factual findings, and as just noted, Kime's testimony does not establish that D&R misappropriated funds owed to subcontractors or suppliers. The arbitrator also noted that the Porter litigants' expert "did not make any determination that D&R retained any funds."

In sum, the trial court did not err by declining to vacate the arbitration award on the basis that the arbitrator improperly shifted the burden of proof regarding the MBTFA claim. The Porter litigants have not identified an error of law in the arbitrator's award, nor have they established that he exceeded his power. And our limited scope of review does not allow us to revisit the arbitrator's factual findings or the merits of his decision.

B.

The Porter litigants next argue that they were substantially prejudiced by the manner in which the arbitrator conducted the hearing. See MCR 3.602(J)(2)(d).

This argument appears to be premised on the contention that the arbitrator accepted testimony from D'Herin and not from Porter on whether 955 Monroe had sufficient funds in its loan for the project to proceed. Investigating this claim would require us to inquire into the arbitrator's possible credibility determinations and weighing of the evidence, which we may not do. See *Belen v Allstate Ins Co*, 173 Mich App 641, 645-646; 434 NW2d 203 (1988). In addition, the Porter litigants ignore that the arbitrator, who sat through three days of arbitration testimony and reviewed thousands of pages of documentation, was in the best position to render the arbitration award. For these reasons, their argument that they were substantially prejudiced by the manner in which the arbitrator conducted the hearing is unavailing.

C.

The Porter litigants also argue that the arbitrator refused to hear evidence material to the controversy. See MCR 3.602(J)(2)(d). We disagree. As noted above, the arbitrator was in the best position to render the award, and his mental processes for arriving at the award are beyond the scope of our review. See *Washington*, 283 Mich App at 672. The fact that the arbitrator did not address certain evidence in the award does not show that he "refused to hear" it, or that he failed to consider it. Again, we may not review the arbitrator's weighing of the evidence.

D.

Finally, the Porter litigants make arguments suggesting that the arbitrator should have awarded additional damages for the breach-of-contract claim against D&R. In particular, they present a list of tasks, unsupported by citation, that were allegedly paid for but never completed. They further claim that the arbitrator should have awarded damages for alleged faulty work.

These arguments fall short because they essentially boil down to yet another claim that the arbitrator prioritized certain pieces of evidence over others regarding D&R's use of project funds, and would require us to look beyond the face of the arbitration award and consider how the arbitrator weighed the evidence. As noted above, any error of law must be discernable on the face of the award itself, and a reviewing court will not engage in a review of an arbitrator's mental process. Because these arguments would require us to do so, they are unavailing.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett